**REMINGTON RAND BUSINESS SERVICE, Inc., v. WALTER J. PETERSON CO.**

**No. 5864.**

Circuit Court of Appeals, Sixth Circuit.

April 15, 1932.

12

Marshall M. Uhl, of Grand Rapids, Mich. (Knappen, Uhl, Bryant & Snow, of Grand Rapids, Mich., on the brief), for appellant.

Edgar H. Johnson, of Grand Rapids, Mich. (Travis, Merrick, Johnson & McCobb, of Grand Rapids, Mich., on the brief), for appellee.

Before MOORMAN, HICKENLOOPER, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The principal question is the sufficiency of the note or memorandum relied upon to take the contract in dispute out of the Mich-igan statute of frauds, in so far as it affects agreements not to be performed in one year. The appellee was the plaintiff below, and will be so designated. It is a corporation engaged in the advertising business, and had been preparing and placing all of the advertising for the Kalamazoo Loose Leaf Binder Company for many years. About September, 1927, the latter. company was merged with the appellant, which will be hereinafter referred to as the defendant. After the merger, plaintiff claims that it entered into an oral agreement with the defendant through a Mr. Wigginton, then vice president and assistant general manager of the defendant, and formerly the president of the Kalamazoo Loose Leaf Binder Company. The subject-matter of the agreement was the placing of the defendant's advertising for the year beginning February 1, 1928. The contract was made November 17, 1927, and it is not disputed that it was not to be performed within one year, and so was within the terms of section 13417, Michigan Compiled Laws of 1929, the statute of frauds. After the contract was entered upon, some question arose as to its terms, and Mr. Proctor, who had become defendant's advertising manager, wrote to plaintiff on September 14, 1928, asking for a copy of its agreement. This letter was written after Mr. Wigginton had left the defendant company. Plaintiff replied on September 19, 1928, as follows: "Our agreement as regards the handling of the Remington-Rand account was made by Mr. Wigginton as follows: We are to have the entire account for a minimum term of one year beginning February, 1928; we are to open a branch in New York City for speedy contact and service; the total volume of advertising during this period of time is to be approximately $750,000.00, and not less than $500,000.00. The account is to be contacted by Mr. Walter J. Peterson, who is to be in the New York branch of the Walter J. Peterson Company, because of his familiarity and experience with the business equipment industry."

Previous to the receipt of this letter Proctor had written Wigginton to obtain his version of the agreement, and under date of September 28, 1928, wrote to Peterson as follows: "I have received a letter from Mr. Wigginton practically confirming your agreement with us, which you sent me on September 19th. I find upon investigation that we will place through you a little better than $300,000.00 worth of space advertising this year. On this basis, in conformity with your agreement, we believe that 60% of· the art

charges should be absorbed by you. If this seems to you a fair settlement of this situation, we will pass the art bills for payment, totalling $14,306.25, minus the 60% reduction."

Peterson refused to acknowledge obligation to absorb any amount of the bills for art work, and in further explanation Proctor wrote him on October 4, 1928, a letter containing the following: "The basis upon which I made my reduction on art work bills was this: That we were billing through you a little better than $300,000.00 worth of space advertising, which is 60% of the amount of space which Mr. Wigginton assured you he would bill through you."

The defendant during the contract year placed considerable space advertising through agencies other than the plaintiff, the amount of such advertising being shown by stipulation. It is conceded that in advertising contracts the agency receives its commission from publishers and not from the advertisers.

The plaintiff's suit is to recover commission on advertising placed by the defendant through other agencies. The letters relied upon to take the claimed agreement out of the statute of frauds were at the trial received in evidence over defendant's objection, a motion by defendant for directed verdict was overruled, and from the judgment entered against it upon verdict of the jury, the defendant appeals.

Defendant contends that the letters relied upon as a note or memorandum do not take the contract out of the statute of frauds, in that they do not contain the essential elements of a contract, nor of the oral contract proved. Analyzing the letter of September 19th, it appears that the plaintiff (1) was to have the entire account for the period of one year; (2) the total volume of advertising was to be approximately $750,000, and not less than $500,000; (3) plaintiff was to open a branch office in New York; (4) Mr. Peterson was to be in that office, and the account was to be contacted by him. The defendant complained that no one could tell from the letter what the plaintiff was to do, and what the defendant was to do, or what the stated volume of advertising was to cover; that there was nothing in the letter which indicated that the amount was to be expended on advertising space, rather than upon direct mail advertising, upon which the plaintiff would receive no commission; that having opened an office, it is not clear what the plaintiff was to do, and how extensive a service it was to

perform. It is further contended that the writings do not state that Peterson was personally to manage the branch office, plan advertising, produce it, prepare the campaign, make layouts, make drawings, do research work, procure art work, assist Mr. Proctor in any way possible, furnish a service more extensive than ordinary agency service, and assist in the preparation of art work on direct mail advertising, all of which it is claimed was included in the oral agreement.

Early construing the statute of frauds, the Michigan Supreme Court held that when a contract is not written out, a memorandum must embrace all its substantial terms, and cannot be aided by parol evidence when essentially defective. Hall v. Soule, 11 Mich. 494; Abell v. Munson, 18 Mich. 306, 100 Am. Dec. 165. Clearly what is meant is that no substantial term of the contract can be imported into the note or memorandum by parol. This is not to say, however, that the note or memorandum is not to be read in the light of attendant facts and circumstances, custom or usage, or previous transactions between the parties. "The statute must not be pressed to the extreme of a literal and rigid logic. Some compromise is inevitable if words are to fulfill their functions as symbols of things and of ideas." Judge Cardozo, in Marks v. Cowdin, 226 N. Y. 138, 123 N. E. 139.

It is true that some of the later Michigan cases, if read without regard to the application of opinion to facts, may suggest that nothing whatsoever is to be supplied by parol. Wagner-White Company v. Holland Co-operative Association, 222 Mich. 58, 192 N. W. 552; Windiate v. Leland, 246 Mich. 659, 225 N. W. 620. It is clear, however, in following the current of the court's opinion, that there is absent a purpose to place a narrower construction upon the statutes than that placed upon it in the beginning. "In so far as we are advised this rule has never been departed from in the subsequent decisions of this court." Paul v. Graham, 193 Mich. 447, 160 N. W. 616. "This court, quite early in its history, declared that a memorandum, to be sufficient under the statute of frauds, must be complete in itself and leave nothing to rest in parol." Wagner-White Company v. Holland Co-operative Association, supra.

It cannot be assumed that the Michigan court interprets the Michigan statute with any greater rigidity or literalness than is found in the best reasoned cases elsewhere. "In every case it must be considered what is a sufficient description, with reference to sur-

rounding circumstances and the facts." Catlin v. King, 5 Ch. D. 660. "You cannot have a description in writing that will shut out all controversy, even with the help of a map." Shadlow v. Cottrell, L. R. 20 Ch. D. 90. "The memorandum which it requires, like any other memorandum, must be read in the light of reason." Speaking of attendant circumstances and previous transactions between the parties: "To give heed to these things is not to ignore the rule that the writing must contain all the material terms of the agreement. It is to explain the memorandum without changing or enlarging it. We think the process is one that is justified by precedent." Judge Cardozo in Marks v. Cowdin, supra. " 'There is no mystery about the statute of frauds.' * * * The general rule in the interpretation of written instruments is that it is permissible for the expositor to place himself as nearly as possible in the position of the maker of such instrument, and to this end parol evidence is admissible to show the facts and circumstances surrounding such maker at the time the instrument was executed." Colonial Ice Cream Co. v. Southland Ice Utilities Corporation, 60 App. D. C. 320, 53 F.(2d) 932, 934, quoting from Matthews v. LaPrade, 130 Va. 408, 107 S. E. 795.

■ Tested by these rules, we are of the opinion that the note or memorandum here relied upon is complete in itself and leaves no substantial element to be supplied by parol, and that it is substantially the contract entered upon. It identifies the parties, it specifies the duration of the contract, and it indicates its subject-matter: "Our agreement as regards the *handling* of the Remington-Rand account." The Fifth Circuit Court of Appeals had no difficulty in construing an undertaking to "handle" the output of a saw and planing mill. Kamm v. Pritchard, 296 F. 871. The plaintiff is to have the entire account for the period of one year. What the entire account was, was ascertainable, and was in fact ascertained and incorporated into the stipulation. Plaintiff was to open a branch office in New York. It is no answer to say that the memorandum is silent as to what was to be done in the branch office. The parties or their predecessors had dealt with each other before. The defendant was a big advertiser. It understood the functions of an advertising agency. Plaintiff had placed advertising for a number of years for Mr. Wigginton as president of the Kalamazoo Loose Leaf Binder Company; the contract was made with Mr. Wigginton,

and the defendant is the successor of the Kalamazoo Company. There is persuasiveness in the comment of the District Judge that where a contract like the one here in dispute is one for personal service which is based largely upon the experience, reputation, and skill of the one employed, to state with precise limitations what one is to do is a practical impossibility, and trying to do it makes for uncertainty rather than for certainty.

■■ We note other assigned errors. The introduction of the letters relied upon as a note or a memorandum was objected to on the ground that they were neither embodied in the declaration nor attached thereto as exhibits. Defendant relied upon rule 21, section 6, of the Circuit Court Rules for the State of Michigan then in force, which provided that whenever a cause of action was based upon a written instrument or document, the substance of such instrument or document must be set forth in the pleading, and a copy thereof attached as an exhibit. It may perhaps be sufficient to say that the instant suit is not based upon a written instrument or document, but upon an oral agreement. While the federal court may be under obligation to apply a state rule of practice not in conflict with its own rules, we know of no authority for the extension of local rules beyond their plain meaning, and none is cited. Moreover, the Michigan Amendment Statute, section 14144 of the Compiled Laws of 1929, provides: "The court at every stage of the action or proceedings shall disregard any error or defect in the proceedings, which do not affect the substantial rights of the parties." We took notice of this section in Ohio Boulevard Land Corporation v. Greggory (C. C. A.) 46 F.(2d) 263, but in respect to a cause of action based upon a written contract. It appears from the record here that the case was tried before, and the defendant was doubtless fully apprised of the grounds upon which the plaintiff claimed to have a valid and enforceable contract. The plaintiff's failure to set out the note or memorandum in its declaration did not therefore affect in any degree the defendant's substantial rights.

■ Error is also assigned as to the rule of damages applied. Under the charge of the court plaintiff was permitted to recover commission on all advertising placed by the defendant with other agencies during the life of the contract. Defendant sought an instruction that limited recovery to the amount of the commission less the expense of han-

dling the additional advertising. The rule governing the measure of damages contended for is correct, but it had no application to the case. Plaintiff gave evidence that it had incurred all the expense necessary for the purpose of handling the volume of advertising agreed to be placed; that it held itself ready at all times to place the full amount of advertising contracted for; and that to have handled all of it would not have subjected it to any additional expense. This evidence was not disputed, and it made at least a prima facie case that the plaintiff was entitled to the full commission.

As to the claim that the contract was canceled because of some breach by the plaintiff, we find no substantial evidence in the record to support it.

Other errors assigned have been considered, but we do not find any of them substantial enough to affect decision.

The judgment below is affirmed.