## CIRCUIT COURT OF ROANOKE COUNTY

Alfred N. Cook

v.

Mountain Trust Bank,
Executor of the Estate
of A. S. Cook, deceased

March 6, 1956

By JUDGE F. L. HOBACK

The Plaintiff by his Motion for Judgment filed herein on June 18, 1955, contends that the Defendant owes him $18,000.00 by reason of two certain checks drawn by A. S. Cook and made payable to Alfred N. Cook, or order, said checks being drawn on Mountain Trust Bank of Roanoke, Virginia. One of said checks is dated October 3, 1953, in the amount of $8,000.00 and contains the notation "Gift to be cashed at my death (A. S. Cook)." The other check is dated February 17, 1954, and is in the amount of $10,000.00 and contains the notation "Gift to be cashed at my death (A. S. Cook)." A. N. Cook also signed this check.

It is asserted that the bank declined to honor the checks which were presented to the bank within two weeks of the death of A. S. Cook on the ground that the depositor had insufficient funds in the bank to cover the checks.

The Defendant on July 7, 1955, filed its Motion for a Bill of Particulars, and said Bill of Particulars was furnished and filed by Order entered on July 21, 1955. Grounds of Defense were filed on July 29, 1955. A Pre-Trial Conference was held on September 7, 1955, wherein the issues were stipulated and agreed upon by Counsel, which written Stipulation was approved by the Court September 9, 1955. On October 28, 1955, a Motion for Summary Judgment was filed herein, and by Order entered December 8, 1955, a Motion in Opposition to Defendant's Motion

for Summary Judgment was filed. An additional conference was had by the Court and Counsel on December 20, 1955, at which time the Motion for Summary Judgment was argued, and, thereafter, a written stipulation for the purpose of the Motion for Summary Judgment was filed herein on January 9, 1956, by the Defendant.

The Defendant filed its Memorandum of Authorities on January 9, 1956. Reply Brief on behalf of the Plaintiff was filed herein on February 14, 1956, and the Rebuttal Brief on behalf of the Defendant was filed on February 25, 1956.

It has been conceded by all parties that for the purpose of considering the Motion for Summary Judgment that the two instruments in question were executed by A. S. Cook, that he intended to make gifts to his nephew, A. N. Cook, who had performed services for his uncle, A. S. Cook; that the instruments were delivered to A. N. Cook at a time when A. S. Cook thought death was imminent. In short, it has been stipulated herein by the Defendant that for the purpose of its Motion for Summary Judgment that all of the essential attributes for a gift causa mortis had been complied with except that of possession of the funds, but that the legal effect of what was done was not sufficient to bring about a valid gift causa mortis. Insofar as the position of the Defendant is concerned, the Motion for Summary Judgment practically amounts to a Demurrer to the evidence that the Plaintiff would otherwise have to introduce to prove the allegations in his Motion for Judgment.

The Court has carefully considered the Briefs filed herein and the authorities and arguments there set forth.

In the Opinion of the Court, the instruments in question are not checks, but are bills of exchange. See Code Sections 6-479 and 6-538. However, neither a check nor a bill of exchange of itself operates as an assignment. See Code Sections 6-480 and 6-543. In the instant case this is all the more true, because, as set forth in the Motion for Judgment, there were insufficient funds at the time the bills of exchange were presented to the drawee bank for acceptance after the date of payment arrived, namely after the death of A. S. Cook.

While all parties concede that the instruments were delivered and given by A. S. Cook to A. N. Cook, nevertheless, at that time nothing was given but promises to pay and which promises being in the nature of gifts lacked

consideration, and hence are not enforceable against the estate of A. S. Cook unless the instruments amount to gifts causa mortis.

In addition to the authorities cited by Counsel in their Briefs, the Court refers also to *King, Ex'x v. Merryman, Adm'x*, 196 Va. 844, wherein the subject is discussed at length by the Court, and it was there held, among other things, that even a joint bank account with the provision that it was subject to the check of either of the depositors, or the survivor, was not sufficient to constitute a gift causa mortis. The Court in discussing the prerequisites for such a gift said on page 858: "On May 24, 1949, he merely said to Mrs. King that if anything happened to him, the money would be hers. This was not a gift *in praesenti*. It did not confer possession of the money until the donor's death. It was at most only an abortive testamentary act and not a gift."

"Where a person under an apprehension of imminent death delivers to the donee a national bank pass book, it is effectual to make a valid gift causa mortis of the book itself, but is insufficient, without more, to pass title to any money on deposit in the bank." See 9 M.J. page 211.

In the instant case, the two instruments were delivered, but they conferred no funds as they were both not to be paid, according to the terms of each, until after the death of the drawer, A. S. Cook.

In *Norris v. Barbour*, 188 Va. 723, the decedent delivered to a trustee a bond payable one year after decedent's death, with interest, and which recited on its face that it was given and received and the profits were to be applied according to a certain trust instrument executed by the decedent to the trustee. The scheme was clearly an effort on the part of the decedent to exclude his wife from sharing in his estate. It was contended on behalf of the wife that the bond and trust were not enforceable as a gift because there was no delivery of the property but only a promise. The Court held that this contention was sound as the decedent did not deliver to the trustee the securities which constituted the corpus of his estate, nor did he divest himself of the title thereto. He merely transferred to the trustee a promise to pay to the trustee one year after death a certain sum of money.

In the instant case, A. S. Cook transferred no money by the instruments in question and did not divest himself of title to said funds and specifically provided that the checks were not to be cashed, and, hence not payable, until after the death of the drawer, A. S. Cook.

In *Knight* v. *Mears*, 156 Va. 676, a widow claimed that her husband had given her his bank deposits by delivering to her his bank books. An account represented by one of the books while called a savings account proved to be a mere debit and credit account subject to check by the depositor. It was held that the delivery of such a bank book to the donee was ineffectual as a gift inter vivos, citing among others the case of *Thomas' Adm'r* v. *Lewis et al.*, 89 Va. 1. In the instant case only the bills of exchange were delivered, and they were not payable until after the death of A. S. Cook, the drawer. In *Knight* v. *Mears*, the Court said, on page 681, quoting from *Thomas* v. *Lewis*: " 'All gifts, whether *inter vivos* or *causa mortis*, are gifts *in praesenti*. There must be words of present gift as well as delivery. The one without the other is insufficient. Though there be actual delivery, yet if the words of gift accompanying the delivery indicate an intention on the part of the donor not to confer on the donee the power of taking physical possession of the thing until the donor's death, then the proceeding is an abortive testamentary act and not a gift.' "

In *Gardner* v. *Moore's Admr.*, 122 Va. 10, the facts are strikingly similar to the case now under consideration. The Court held that the effect of the purported gift of part of a judgment amounted to a bill of exchange, and that an agreement for future delivery is nothing more than a promise to make a gift. Judge Burks stated that the instrument was not an assignment either actual or equitable, and further, on page 15: "The fact that the donor had no other estate than the judgment cannot affect the legal interpretation of the instrument of supposed donation. The same results would have followed if the donor had used an insufficiently executed will as the instrument of donation." And again on page 16: "The gift, however, was not completed in her lifetime and was revoked by her death." In the instant case the instruments in question do not legally amount to either wills or gifts causa mortis despite the admitted intention of A. S. Cook. As was said by the Court in *Clarkson* v. *Bliley*, 185 Va. 82, on page 93, "equity cannot complete

an incomplete gift, no matter how clear the donor's intent or how meritorious the donee's claim. And no one would claim that equity could reform or aid an improperly executed will, no matter how clearly and emphatically the testamentary intent might be expressed; it is ineffectual unless it be expressed in form and manner as required by the statute."

The Defendant, having in its Motion for Summary Judgment and in the written Stipulation filed herein, admitted all of the evidence which the Plaintiff would have to prove to sustain the allegations of his Motion for Judgment, as amplified by his Bill of Particulars, and the legal effect of such facts being insufficient to establish gifts causa mortis, the Motion for Summary Judgment is proper and in accordance with Rule 3:20. The Defendant is accordingly entitled to Summary Judgment herein.

An Order may, therefore, be prepared sustaining the Defendant's Motion for Summary Judgment and awarding Judgment in favor of the Defendant in accordance with this written Opinion of the Court, which is filed herein and made a part of the record in this case, the effect of which is to dismiss the Motion for Judgment at the costs of the Plaintiff.